RENDERED: JUNE 3, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1298-MR

ANTONIO T. BUNTIN                                                         APPELLANT

                          APPEAL FROM KENTON CIRCUIT COURT
v.                        HONORABLE ACENA JOHNSON BECK, JUDGE
                          ACTION NO. 10-J-01330

COMMONWEALTH OF KENTUCKY,
EX REL. SHANNON DERKSON                                                   APPELLEE

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  ACREE, CETRULO, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Antonio T. Buntin appeals from an order of the Kenton

Family Court which found him in contempt for failing to pay child support.

Appellant argues that he should not have been held in contempt because he did not

know he was ordered to pay child support.  Alternatively, Appellant argues that the

amount of money the court ordered which would allow him to purge the contempt was excessive. We conclude that the trial court did not err in holding Appellant in contempt; however, we hold that the purge amount was too high.

## FACTS AND PROCEDURAL HISTORY

In August of 2010, the Commonwealth filed a motion seeking to declare Appellant the father of a minor child born in 2007. The Commonwealth was seeking child support from Appellant if he was declared the father. Appellant denied being the father. The court ordered DNA testing. In October of 2010, Appellant was incarcerated; therefore, DNA testing was performed at the jail in which Appellant was located. The court appointed a guardian *ad litem* ("GAL") to represent Appellant because of his incarceration. The DNA analysis proved Appellant was the father of the child.

A child support hearing was scheduled for January of 2011. The GAL informed the court that Appellant had been released from custody in November of 2010, and that she had sent Appellant correspondence via mail informing him of the January 2011 hearing. The GAL also requested financial information from Appellant. The GAL received no response from her correspondence.

On January 12, 2011, the child support hearing took place. Appellant did not appear. The trial court found Appellant to be the child's father and imputed minimum wage income to him. The court ordered that Appellant pay

$206 per month in child support. Appellant was also ordered to reimburse the Commonwealth $90 for the DNA test.

Later in 2011, Appellant was arrested for first-degree robbery.[1] In January of 2012, Appellant pleaded guilty to the charge and was sentenced to ten years in prison. Appellant was paroled on December 9, 2019.

On June 30, 2021, the Commonwealth filed a motion to hold Appellant in contempt for failing to pay child support. As of May 31, 2021, there was a child support arrearage of over $32,000. The Commonwealth indicated that there had been a single child support payment since Appellant's parole, a payment of $1,200 on November 20, 2020.

A contempt hearing was held on October 6, 2021. Appellant did not stipulate to the contempt. Appellant testified that he did not have a stable job and that he worked odd jobs for his family. Appellant testified that he had been unsuccessful in finding regular employment due to his criminal record. He testified that he made, at most, $1,000 a month, but sometimes less than that. He also testified that he did not know he had been ordered to pay child support. Finally, he testified that he believed he had signed away his parental rights to the child, but discovered that he had only agreed to give up custody.

---

[1] Kentucky Revised Statutes (KRS) 515.020.

At the conclusion of the hearing, the court held Appellant in contempt. The court believed that Appellant knew of the child support because he had a GAL at the time the order was entered. The court inferred that he would have been notified by the GAL of the child support order. The court sentenced Appellant to six months in jail, but held that the sentence was to be conditionally discharged after a period of two years. The court ordered him to keep current on his child support and pay an extra $60 a month toward the arrearages.

Appellant's counsel requested that the court enter a purge amount for the conditionally discharged sentence. Counsel requested the amount be $100. The court agreed that a purge amount should be set, but set the amount at $5,000. Appellant's counsel objected and argued that the amount was too high and there was no realistic expectation that Appellant could pay that amount. The court did not alter the purge amount. This appeal followed.

### ANALYSIS

> [A] trial court has broad authority when exercising its contempt powers; consequently, our review is limited to a determination of whether the court abused its discretion. *Kentucky River Community Care, Inc. v. Stallard*, 294 S.W.3d 29, 31 (Ky. App. 2008). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). The trial court's underlying findings of fact are reviewed for clear error. *Commonwealth, Cabinet for*

*Health and Family Servs. v. Ivy*, 353 S.W.3d 324, 332 (Ky. 2011).

*Nienaber v. Commonwealth ex rel. Mercer*, 594 S.W.3d 232, 235 (Ky. App. 2020).

There are two types of contempt, civil and criminal.

> A civil contempt occurs when a party fails to comply with a court order for the benefit of the opposing party, while criminal contempt is committed by conduct against the dignity and authority of the court. It is not the fact of punishment but rather its character and purpose, that often serve to distinguish civil from criminal contempt.
>
> In a civil contempt proceeding, the initial burden is on the party seeking sanctions to show by clear and convincing evidence that the alleged contemnor has violated a valid court order. Once the moving party makes out a prima facie case, a presumption of contempt arises, and the burden of production shifts to the alleged contemnor to show, clearly and convincingly, that he or she was unable to comply with the court's order or was, for some other reason, justified in not complying.

*Id.* at 235-36 (internal quotation marks and citations omitted).

> Having found a party in contempt, the court's next task is to fashion a remedy. Sanctions for criminal contempt are meant to punish the contemnor's noncompliance with the court's order and to vindicate the court's authority[.] In contrast, sanctions for civil contempt are meant to benefit an adverse party either by coercing compliance with the order or by compensating for losses the noncompliance occasioned. For the punishment to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge[.] [T]he defining characteristic of civil contempt is the fact that contemnors carry the keys of their prison in their own pockets. Significantly, the purge

-5-

> condition of a coercive order must be something
> presently within the contemnor's ability to perform. It is
> logically unsound to use the power of civil contempt to
> compel the doing of an impossible act.

*Id.* at 236 (internal quotation marks and citations omitted). The case at hand concerns civil contempt.

With the above framework in mind, we now move on to Appellant's arguments. Appellant first argues that the trial court should not have found him in contempt. He claims that he did not receive notice that he was ordered to pay child support and that he was financially incapable of providing said support. We disagree.

First, Appellant had a GAL during the period when the child support was ordered. While there was no definitive proof that Appellant received a copy of the child support order, and Appellant claimed he did not receive the order, it was reasonable for the court to infer that the GAL performed her job and forwarded the order to Appellant. In addition, even though Appellant was only sporadically employed once he was paroled in December of 2019, he was making some money and could have at least made partial payments. In fact, he made a single payment of $1,200 in November of 2020. We acknowledge that this amount would equate to around six months' worth of payments; however, it was a single payment made

in the one and a half years since Appellant was released on parole.[2] We conclude that the trial court did not err in holding Appellant in contempt.

Appellant's second argument on appeal is that the trial court erred in setting the purge amount at $5,000. He claims that this amount was too high and that it would be impossible for him to pay that amount. We agree with Appellant's argument. As stated above, a purge condition must be something presently within Appellant's ability to perform. Appellant testified that he could realistically pay $100 that day to purge his contempt. In addition, he testified to his inability to find steady employment and that he made small amounts of money working odd jobs for his family. He also testified that he lived with his uncle, paid his uncle $100 a month in rent, had no vehicle, paid $50 a month for a cell phone, and paid $50 a week for groceries. Based on Appellant's lack of meaningful employment and his testimony regarding his expenses, a $5,000 contempt purge amount is unreasonable. It is clear from his testimony that Appellant did not have a present ability to pay that amount of money. It was an abuse of discretion to set the purge amount at such a high amount in this case.

---

[2] The Commonwealth indicated that it was seeking contempt for Appellant's failure to pay child support only for the time period after he was paroled in 2019. The Commonwealth acknowledged that he would have been unable to pay support during his incarceration.

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgment that Appellant was in contempt for failing to pay child support. We do believe that the court erred in setting the purge amount at $5,000 as it was an unreasonable amount based on Appellant's finances; therefore, we reverse and remand and direct the trial court to set another purge condition.

ACREE, JUDGE, CONCURS.

CETRULO, JUDGE, CONCURS IN PART, DISSENTS IN PART, AND FILES SEPARATE OPINION.

CETRULO, JUDGE, CONCURRING IN PART AND DISSENTING IN PART: I would affirm the order of the Kenton Family Court. I do not agree that the Appellant's "purge" amount of $5,000 was too high. Appellant's own testimony was that he made anywhere from $330 a week to $1,000 a month depending on how much he worked. This employment was "under the table" and thus not subjected to the normal deductions from W-2 employment. The Appellant testified on cross examination that in the month preceding the hearing he had made approximately $600 and had paid nothing towards his child support obligation.

When being evaluated for a public defender at arraignment, he testified he was making $110 per day, at least three days per week. The family court set the purge amount after hearing all the testimony concerning the prior

child support order and Buntin's current work and expense situation, and did so with no determinative date for the amount to be paid.

Appellant is under a conditionally discharged sentence for two years, and has two years to pay $5,000. Thus, I do not agree that the family court abused its discretion in making that determination based upon the Appellant's own evidence of earnings and the two-year time period afforded to him to make that payment.

I would affirm the decision below.

BRIEFS FOR APPELLANT:

Emily Holt Rhorer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky
Frankfort, Kentucky

Ashley M.A. McNeese
Special Assistant Attorney General
Covington, Kentucky